HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TIEAST BACKMON, an individual, | CASE NO. 2:24-cv-01420-RAJ |
| Plaintiff, | ORDER |
| v. | |
| DARDEN CORPORATION, a foreign profit corporation doing business as Olive Garden; and DARDEN CONCEPTS, INC., a foreign profit corporation doing business as Olive Garden, | |
| Defendants. | |

## I.  INTRODUCTION

THIS MATTER comes before the Court on Defendants Darden Corporation and Darden Concepts, Inc. (collectively, "Defendants")'s Motion to Compel Arbitration and Stay Case. Dkt. # 8. Plaintiff Tieast Backmon ("Plaintiff") filed a Response, to which Defendants replied Dkt. ## 11, 13.

For the reasons set forth below, the Court **GRANTS** Defendants' Motion and **ORDERS** this case **STAYED** pending arbitration proceedings.

## II. BACKGROUND

This is an employment discrimination case relating to an injury Plaintiff sustained while performing his normal job duties. The Court sets forth the relevant facts below, most of which derive from Plaintiff's Complaint.

Plaintiff worked as a line cook at one of Defendants' restaurants in Lynnwood, Washington. Dkt. #1-2 at ¶ 2.2. On May 22, 2017, Plaintiff suffered a severe injury to his right foot when he tripped over a drain in the kitchen of the restaurant. *Id.* at ¶ 2.3. That same day, Plaintiff completed an accident report and filed a worker's compensation claim. *Id*. at ¶ 2.4. During his worker's compensation proceedings, Plaintiff alleged that Defendants, through their counsel, violated the Fair Debt Collection Practices Act ("FDCPA") and RCW 19.16.250 (collectively referred to as the "FDCPA claim"). Dkt. # 11 at 2. Plaintiff also claimed that Defendants published defamatory statements about him. *Id*. In addition to his FDCPA and defamation claims, Plaintiff asserts causes of action in the instant matter for retaliation, discrimination, and failure to accommodate. Dkt. # 1-1 at ¶¶ 3.1–3.21.

As a condition of his employment, Plaintiff agreed to abide by Defendants' Dispute Resolution Process ("DRP"). Dkt # 10-2 at 2. On November 15, 2016, Plaintiff agreed to the DRP's terms and conditions by signing a DRP Acknowledgement, which included his agreement and understanding of the following:

> I acknowledge that I have received and/or have had the opportunity to read this arbitration agreement. I understand that this arbitration agreement requires that disputes that involve the matters subject to the agreement be submitted to mediation or arbitration pursuant to the arbitration agreement rather than to a judge or jury in court. I agree as a condition of my employment, [sic] to submit any eligible disputes I may have to the DRP and to abide by the provisions outlined in the DRP. I understand this includes, for example, claims under state and federal laws relating to harassment or discrimination, as well as other employment-related claims as defined by the DRP. Finally, I understand that the

Company is equally bound to all of the provisions of the DRP.

*Id*.

The DRP included an express arbitration provision, elucidating that: (1) only disputes that stated a legal claim would be arbitrated; (2) the American Arbitration Association ("AAA") would administer the arbitration subject to its rules unless the parties jointly selected an arbitrator that met certain qualifications; (3) the arbitrator's decision was final and binding and the dispute would be considered resolved if there was not a legal claim, untimely filing, or if it had not been timely pursued; and (4) the request for arbitration must be in writing, provided to opposing party by certified mail or registered mail, within thirty days of receipt of written notification that mediation had been terminated. Dkt. # 10-1 at 10–12. Defendants now move to enforce the DRP and its arbitration provision.

### III. LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), the Court's review is limited to deciding whether an arbitration clause (1) is valid and (2) covers the dispute at issue. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). The party seeking to compel arbitration "bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Norcia v. Samsung Telecomm. Am.*, 845 F.3d 1279, 1283 (9th Cir. 2017). If an agreement exists, the FAA "leaves no place for the exercise of discretion . . . , but instead mandates that district courts shall direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213 (1985).

Under the FAA, generally applicable contract defenses, may invalidate an arbitration agreement. 9 U.S.C. § 2; *AT&T Mobility LLC v. Concepcion*, 563 U.S 333, 339 (2011). Federal courts determine validity using ordinary state law rules of contract

formation. *Id.* Contract defenses like unconscionability can thus invalidate an arbitration clause. *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 921 (9th Cir. 2013) (citing *Concepcion*, 563 U.S. 333 (2011)).

## IV. DISCUSSION

The Court finds that the arbitration provision quoted above is valid. Specifically, there is no dispute that Plaintiff consented to the DRP containing the arbitration provision. Additionally, all his claims fall within the scope of the arbitration provision.

### A. Existence of a Valid Arbitration Agreement

Plaintiff consented to an agreement containing a binding arbitration provision when he signed the DRP as a condition of his employment. The DRP provides clear and unmistakable intent to delegate arbitrability questions to an arbitrator through its incorporation of the AAA rules. *See generally* Dkt. # 10-1. The DRP incorporates the AAA rules by stating, "[t]he arbitration will be conducted according to the Employment Arbitration Rules and Mediation Procedures of the [AAA] . . ." *Id.* at 11. Incorporated AAA Rule 7(a) outlines, "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Am. Arb. Ass'n 2013. Furthermore, the DRP provides that the AAA rules are "available online at **www.adr.org** under the heading 'Rules & Procedures' or can be found using an internet search engine, such as Google, by searching for 'AAA employment Arbitration Rules and Mediation Procedures.'" Dkt. # 10-1 at 9.

In his Response to Defendants' Motion, Plaintiff contends that he is an unsophisticated party and any delegation clause, including through the incorporation of AAA rules, is unconscionable. Dkt. # 11 at 5. Plaintiff also claims that the nature of his job means he cannot be expected to understand that incorporation of the AAA rules by mentioning them in the arbitration agreement would bind him to such rules. *Id.* at 6.

ORDER - 4

In determining whether a contract is unconscionable, Washington courts have held that "either substantive or procedural unconscionability is sufficient to void a contract." *Gandee v. LDL Freedom Enters., Inc.*, 176 Wn.2d 598, 603, 293 P.2d (2013) (internal citations omitted). Substantive unconscionability involves those cases where a clause or term in a contract is alleged to be one-sided or harsh. *Al-Safin v. Circuit City Stores, Inc.*, 394 F.3d 1254, 1258–59. Procedural unconscionability exists if a party lacks a meaningful choice surrounding the making of the agreement, and factors to be considered in this determination include the manner in which the contract was created, whether both parties had a reasonable opportunity to understand the terms of the agreement, and whether important terms were buried in fine print. *Robbins v. Comcast Cable Commc'ns, LLC*, No. 3:19-cv-056603-RBL, 2019 WL 4139292, at *5 (W.D. Wash. Aug. 30, 2019). "Severance is the usual remedy for substantively unconscionable terms, but where such terms 'pervade' an arbitration agreement, [Washington courts] 'refuse to sever those provisions and declare the entire agreement void.'" *See Gandee*, 176 Wn.2d at 603 (quoting *Adler v. Fred Lind Manor,* 153 Wash. 2d 331, 358, 103 P.3d 774 (2004)).

Here, there is no evidence to support that the agreement was either substantively or procedurally unconscionable. Plaintiff provided his signature next to the statement, "I acknowledge that I have received and/or have had the opportunity to read this arbitration agreement." Dkt. # 10-2 at 2. Additionally, the DRP's arbitration provision appears across three pages and without the incorporation of fine print. Dkt. # 10-1 at 10–12. The necessary provisions delegating arbitrability appear under subheadings titled "Eligibility" and "Applicable Law and Procedural Rules." *See id*. The incorporated AAA rules delegating issues of "jurisdiction," "scope," and "validity" to the arbitrator are accessible through clear instructions that describe multiple methods to view them.

*See id*. Although Plaintiff posits that there is nothing to demonstrate whether the alleged delegation provision was separately negotiated or bargained for, the text of the agreement is not hidden, is broken separately into paragraphs, and contains unambiguous, plain language. Plaintiff also had unlimited time to review the DRP. Accordingly, there are no facts that indicate the presence of procedural or substantive unconscionability.

**B.    Scope of the Arbitration Provision**

Contrary to Plaintiff's opinion, his FDCPA and defamation claims also fall within the scope of the arbitration provision. As explained above, the dispute at hand centers around an employment-related injury when Plaintiff suffered harm after tripping over a drain in the kitchen of Defendants' restaurant. Dkt. # 1-2 at ¶¶ 2.2–2.3  If not for this injury that *transpired during working hours*, Plaintiff's FDCPA and defamation claims would not exist. Plaintiff further alleges that his claims are not employment-related because the conduct that gave rise to these claims occurred approximately six years after the alleged termination of the employment relationship. Dkt. # 11 at 11. Plaintiff also contends that the DRP covers work-related or employment-related disputes only, and thus the DRP cannot reach disputes based on conduct that occurred well after the termination of the employment relationship. *Id*.

Hindering Plaintiff's specious arguments is the plain language of the agreement. For example, the first page of the DRP reads, "[t]he requirements, obligations, procedures and benefits in this booklet are binding on the Employee and the Company during and after the period of the Employee's employment." Dkt. # 10-1 at 3. The DRP indeed excludes claims for worker's compensation benefits. *Id*. at 5. However, FDCPA and defamation claims do not fall within the scope of workers' compensation benefits simply because they relate to a workplace injury. The key distinction lies in the type of relief being sought, whether it be medical or workplace injury benefits, as opposed to damages

to harm to reputation or improper debt collection, the latter of which applies here. Finally, the FDCPA and defamation claims are amenable to resolution through arbitration as per the DRP policy provided by Defendants. *Id*. at 6.

C.   **Enforceability of Arbitration Provision**

Defendants claim that the arbitrator, and not the Court, must be the party to rule on any arguments Plaintiff presents as to the enforceability of the arbitration provision. The Court concurs with Defendants' reasoning.

"If a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67–69 (2019). The DRP contains an express delegation provision stating the following: "[o]nly disputes that state a legal claim will be arbitrated . . . [t]he arbitrator has the *sole authority* to determine whether a dispute is arbitrable and whether it has been timely filed and pursued." Dkt. # 10-1 at 10 (emphasis added). The DRP further explains that "[t]he arbitrator will resolve any issue/dispute arising out of or relating to the interpretation or application of the DRP or its rules." *Id*.

Plaintiff disputes the enforceability of the arbitration provision on the grounds that the DRP fails to specify that threshold issues of arbitrability are delegated to an arbitrator and that the DRP cannot reach disputes based on conduct that occurred well after the termination of an employment relationship. Dkt. # 11 at 4, 11. Given the binding case law and the Court's prior finding that the arbitration provision is valid, *supra*, the Court defers to the arbitrator to rule on any enforceability arguments.

V.   **CONCLUSION**

Based on the foregoing reasons, the Court **GRANTS** Defendants' Motion to Compel Arbitration and **STAYS** this case. Dkt. # 8. Pursuant to the language contained in the arbitration provision, the arbitration of all disputes will be administered by the

American Arbitration Association under its Consumer Arbitration Rules in effect at the time arbitration commences.

The parties are directed to advise the court of the status of arbitration within ninety (90) days of this order. If the parties fail to commence arbitration within twelve (12) months of this order, the court will dismiss the underlying claims and terminate the case. *See Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 962-63 (9th Cir. 2007).

Dated this 18th day of April, 2024.

The Honorable Richard A. Jones
United States District Judge